United States District Court
District of Massachusetts

| | |
|---|---|
| MARTHA W. CLEMENTE<br>        Appellant,<br><br>        v.<br><br>DAVID M. NICKLESS, TRUSTEE<br>        Appellee. | )<br>)<br>)<br>)<br>)       Bankruptcy Appeal No.<br>)       09-40182-NMG<br>)<br>)<br>)<br>) |

MEMORANDUM & ORDER

GORTON, J.

This case, which concerns a debtor's equitable interest in a parcel of real property, comes before the Court on appeal from the United States Bankruptcy Court for the District of Massachusetts.

I.   **Factual Background**

The following facts are as stated in the Memorandum of Decision of the Bankruptcy Judge.

Vivian Clemente ("the Debtor") was the owner of residential property located at 9 Camden Avenue, Worcester, Massachusetts ("the Camden Property") which she acquired upon the death of her husband in 1999.  The Debtor resided at the Camden Property with her son, Joseph Clemente ("Joseph"), and her daughter-in-law, Martha Clemente ("Martha").  By a deed dated February 7, 2002, the Debtor conveyed the Camden Property to Martha for a stated

consideration of $100.[1]  The Debtor believed that, at the time of transfer, the property was worth between $150,000 and $200,000 and it was encumbered by a $57,000 mortgage.  The Debtor did not file a gift tax return with respect to the transfer.

After the conveyance, Martha refinanced the house on three separate occasions, obtaining a $115,000 mortgage in February, 2002, a $135,000 mortgage in December, 2002, and a $143,000 mortgage in November, 2004.  None of the proceeds from those mortgages was shared with the Debtor.

The Debtor continued to reside at the Camden Property after the transfer.  One of the conditions of the transfer was that Debtor could remain in the property in an "in-law apartment" that was to be constructed for her.  Martha and Joseph paid for the construction of the apartment, which cost approximately $43,000, with the proceeds of the February, 2002 refinancing of the property.  During the time the Debtor lived in the apartment, she paid monthly rent of $375-$400 and the monthly cable bill of $90. She also contributed to the heating bill because she shared utilities with Martha and Joseph.  Martha paid the mortgage, taxes, water and electric bills, all of which were in her name.

## II.   Procedural History

The Debtor filed for Chapter 7 bankruptcy on July 12, 2007.

---

At trial, Martha testified that she and Joseph decided to put the deed in Martha's name because Joseph was already obligated under a mortgage for a different property.

Several months later, the Chapter 7 trustee, David Nickless ("the

Trustee"), filed an adversary proceeding against Martha seeking a

determination that the Debtor retained an equitable interest in

the Camden Property and that he, as trustee, was entitled to

reach that interest on behalf of the Debtor's estate.[2]  The case

was tried before Bankruptcy Judge Joel Rosenthal in Central

Division, on June 19, 2009.

In a Memorandum of Decision dated August 12, 2009, Judge

Rosenthal concluded that the Debtor retained an equitable

interest in the Camden Property in the form of a resulting trust

held by Martha.  Martha filed a motion to amend that judgment

pursuant to Fed. R. Civ. P. 59(e) which the Bankruptcy Judge

denied on September 8, 2009.  The instant appeal followed.

III. **Analysis**

A.    **Standard of Review**

A federal statute vests in United States District Courts

jurisdiction to hear appeals from interlocutory orders and

decrees of bankruptcy judges.  See 28 U.S.C. § 158.  In reviewing

an appeal from an order of a bankruptcy court, a district court

reviews de novo "[c]onclusions of law and legal significance

---

[2]  In a separate count of the complaint, the Trustee
asserted an interest in another property ("the Cutler Property")
which he alleged the Debtor had fraudulently conveyed to Gerald
Clemente ("Gerald"), her other son.  Gerald prevailed on that
count and the Trustee did not appeal the Bankruptcy Judge's
decision.

accorded to facts". <u>In Re Chestnut Hill Mortgage Corp.</u>, 158 B.R. 547, 549 (D. Mass. 1993). The court must, however, accept the bankruptcy judge's findings of fact unless a review of the record demonstrates that they are "clearly erroneous." <u>Id.</u>

B.    Application

Under Massachusetts law, a debtor may hold an equitable interest in real property under an express trust, a constructive trust or a resulting trust. <u>See</u> <u>In re Charles River Press Lithography, Inc.</u>, 338 B.R. 148, 160-61 (Bankr. D. Mass. 2006). An express trust is created by a written or oral statement indicating a party's unequivocal intention to create a trust. <u>Id.</u>; <u>Ventura</u> v. <u>Ventura</u>, 555 N.E.2d 872, 874 (Mass. 1990). Unlike an express trust, which is created by a settlor, constructive and resulting trusts are equitable remedies, imposed by courts to avoid unjust enrichment (constructive trust) or to correct a defect in the execution of a transferor's intent (resulting trust). <u>See</u> <u>In re Charles River Press</u>, 338 B.R. at 160-61.

Here, the Bankruptcy Judge found the doctrines of express and constructive trust inapplicable but concluded that Martha held the Camden Property in a resulting trust for the benefit of the Debtor and entered judgment declaring the Debtor part equitable owner of the property. The instant appeal is limited to the issue of whether the Bankruptcy Judge erred in imposing a

resulting trust by which the Debtor is ruled to have retained a

beneficial interest in the Camden Property.

A resulting trust arises where a party conveys property

under circumstances that raise an inference that she does not

intend for the transferee to receive the entire beneficial

interest in the property.  See In re Lan Tamers, 281 B.R. 782,

792 (Bankr. D. Mass. 2002) (citing Restatement (Third) of Trusts,

§ 7).  Resulting trusts are primarily used to give legal effect

to a party's intent at the time of the transfer.  In re Valente,

360 F.3d 256, 263 n. 3-4 (1st Cir. 2004) (applying Rhode Island

law but relying on the Restatement of Trusts).  A resulting trust

is generally imposed in either of two circumstances: 1) where an

express trust fails or 2) where there is a "purchase money

conveyance" whereby a transfer of property is made to one person

and the purchase price is paid by another, such that a trust

results in favor of the person who furnished the consideration.

See Restatement (Third) of Trusts, §§ 8-9; see also Dicarlo v.

Lattuca, 802 N.E. 2d 121, 125 (Mass. App. Ct. 2004) (discussing

the theory of purchase money conveyance).

The conveyance of the Camden Property does not fit neatly

into either of the two general categories because, as both

parties agree, it was neither a purchase money conveyance nor a

failed express trust.  Thus, a proper determination of whether a

resulting trust was established depends upon whether the

circumstances as a whole demonstrate that the Debtor intended to retain a beneficial interest in the property.  See In re Tougas, 338 B.R. 164, 174 (Bankr. D. Mass. 2006) (looking to the "indicia of ownership" of the property, rather than "the form in which [it] is held"); In re Jewett, 2007 WL 1288740, at * 5 (Bankr. D. N.H. May 2, 2007) (examining acts and conduct of parties with relation to possession of realty to determine if trust was intended).

In concluding that Martha held the Camden Property for the Debtor as a resulting trust, the Bankruptcy Judge relied on the following factual findings:

1)  the transfer was conditional on Joseph and Martha's agreement to construct an in-law apartment for the Debtor on the second floor of the property;

2)  the Debtor remained in continuous occupancy of the property before and after the transfer;

3)  Martha used the proceeds from the $115,000 mortgage on the property to construct the in-law apartment for the Debtor's benefit;

4)  the Debtor continued to reside at the property and retained sufficient control over it;

5)  the Debtor contributed to household bills such as cable and heat, thereby "reserving a right to treat the property as her own";

6)  the Debtor's financial situation did not change after the transfer because the rent and utility payments were the equivalent of her prior mortgage payments;

7)  the Debtor transferred the property for no consideration (despite the agreed-to fact that it was conveyed for $100);

8)    the Debtor did not file a tax return declaring the transfer a gift; and

9)    debtor's testimony at trial that Martha and Joseph were free to sell the property if they wished and that she would move into a "high-rise" apartment building was self-serving and not credible.

The appellant argues that the evidence is insufficient to establish a resulting trust in the Debtor's favor. Rather, she maintains that the conveyance is properly categorized as a gift.

In cases of transfers of property among family members, there is a presumption that a gift is intended. See Krasner v. Krasner, 285 N.E. 2d 398, 399 (Mass. 1972) (transfer from husband to wife triggers presumption that gift is intended); In re Jewett, 2007 WL 1288740, at *5. That presumption is, however, less compelling when the relationship involves in-laws and can be rebutted by evidence that the transferor did not intend that the transferee acquire a beneficial interest in the property. In re Jewett, 2007 WL 1288740, at *5; Krasner, 285 N.E.2d at 399; see Dwyer v. Dwyer, 898 N.E.2d 504, 506-07 (Mass. 2008) (reforming trust to reflect settlor's true intent to retain beneficial interest in property).

Here, the Bankruptcy Judge was mistaken in finding that the Debtor intended that her daughter-in-law, Martha, should hold title to the Camden Property for the benefit of the Debtor. Specifically, the Judge's conclusion that the Debtor "retained sufficient control" over the property lacks factual support.

Although the Debtor continued to live in the property, she paid monthly rent to Martha, a clear indication that she had relinquished her ownership rights.  She contributed to the monthly cost of cable television and heating but the record does not indicate that she retained any decision-making authority over the property.  To the contrary, she testified that Martha and Joseph "could do whatever they want[ed]" with the property. Although the Bankruptcy Judge discredited the Debtor's testimony that she was willing to move into a "high-rise" apartment building in the event that the house was sold, she also testified that she expressed a willingness to live with Joseph and Martha in a different house or to move in with a friend.

The record does not reflect that the Debtor retained financial control over the property.  She was not involved in the (three) refinancings of the property nor did she receive any of the proceeds from the those transactions, apart from the benefit of the construction of the in-law apartment.  The cases cited by the Bankruptcy Judge on this point are readily distinguishable on the facts.  See In re Valente, 360 F.3d at 263 (imposing a resulting trust where debtor "continued to treat the property as his own by, inter alia, paying all of the bills, managing the lease and sale of the property, running a business on the premises, and not paying rent"); In re Beatrice, 277 B.R. 439, 449 (Bankr. D. Mass. 2002) (finding that debtor exercised

sufficient control over property where he was the property's sole resident, paid all the bills and real estate taxes and was responsible for the property's maintenance and upkeep); In re McGavin, 189 F.3d 1215, 1218 (10th Cir. 1999) (imposing resulting trust where debtor paid taxes, insurance and other household bills and used property as collateral for various business and personal loans).

The Bankruptcy Judge also over-emphasized the fact that the Debtor did not file a gift tax return. On that point, he cited Dwyer v. Dwyer, in which the Massachusetts Supreme Judicial Court noted that a husband's failure to file a tax return declaring his transfer of property to his wife as a gift undermined the presumption that he intended it as such. 898 N.E.2d at 506-07. In that case, however, the absence of the gift tax return was relatively insignificant in comparison to other, pertinent facts establishing the husband's ownership interest, such as his payment of the mortgage and continued management and control over the property. Id. Moreover, his wife admitted, in that case, that she understood that no gift was intended, whereas both Martha and the Debtor testified here that the conveyance of the Camden Property was a gift. Furthermore, when questioned as to why she failed to file the gift tax return, the Debtor explained that she did not know that such a procedure was necessary. Although the Bankruptcy Judge was not, of course, obligated to

credit their testimony, his misgivings alone do not support a finding that the opposite was true. See Janigan v. Taylor, 344 F.2d 781, 784 (1st Cir. 1965).

Finally, there is no indication that the Debtor made the transfer in order to conceal her assets from her creditors. Although a fraudulent transfer of legal title is generally indicative of a constructive, rather than a resulting trust, it can serve as evidence of a transferor's underlying intent to retain an equitable interest in the property. See In re Valente, 360 F.3d at 263 (imposing resulting trust where debtor transferred property to his son shortly before declaring bankruptcy and his son admitted that his father's aim was "to scam somebody"). Here, the Debtor did not file for bankruptcy protection until seven years after she had transferred the Camden Property to her daughter-in-law. There is no evidence that, at the time of the transfer, she had any reasonable expectation that her assets would eventually be attached by the bankruptcy trustee.

Moreover, in 2003, the Debtor transferred a different property (the Cutler Property) to her son, Gerald. Although the Trustee attempted to assert an interest in the Cutler Property as well, the Bankruptcy Judge found that the Debtor did not fraudulently convey her interest in that property nor did she retain any beneficial interest therein. That finding, which is

supported by the Debtor's testimony, undermines the Bankruptcy Judge's finding that the Debtor retained an interest in the Camden Property which she testified was a gift to her other son and daughter-in-law.

In sum, the evidence is insufficient to rebut the presumption that the Debtor's transfer of the Camden Property to her daughter-in-law was a gift.  Although the Debtor remained in continuous occupancy of the property before and after the transfer, her relinquishment of control over the property, her payment of rent to the owner and her lack of involvement in the subsequent refinancings all demonstrate that she did not retain an ownership interest therein.  Accordingly, the Bankruptcy Judge erred in finding that Martha held the property in a resulting trust for the benefit of the Debtor and his judgment that the Debtor is a part equitable owner will be reversed.

### ORDER

In accordance with the foregoing, the Bankruptcy Court's decision with respect to Count II of the Trustee's complaint is **REVERSED**, judgment for the Trustee is vacated and judgment is entered for the defendant-appellant, Martha W. Clemente.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated August // , 2010